UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SUNAN YAN and SHA LIU,

                Plaintiffs,                             NOT FOR PUBLICATION
    -against-                                            **MEMORANDUM & ORDER**
                                                                           09-CV-1435 (CBA) (SMG)
THE CITY OF NEW YORK et al.,

                Defendants.
----------------------------------------------------------------x
AMON, Chief United States District Judge:

       The plaintiffs—Sunan Yan and his mother Sha Liu—filed suit alleging that their civil rights were violated when Yan was arrested on July 30, 2007 and later prosecuted in a New York state court for assault, harassment, and criminal possession of a weapon for his involvement in a dispute with his neighbors. The only remaining claims are Yan's claims of false arrest and malicious prosecution against New York City Police Department ("NYPD") Sergeant Edmund Sheridan and Officer Edward Zuno, who both responded to the scene of the neighbors' dispute in Queens, New York. The defendants have moved for summary judgment. For the reasons stated below, the motion is granted.

## BACKGROUND

       The facts of this litigation are drawn from the parties' Local Rule 56.1 statements, as well as depositions and documentary evidence submitted in support of the motion papers. Disputes of fact are noted.

### I. Arrest

       At about 5:00 p.m. on June 30, 2007, Officer Zuno and his partner, Officer Allen Herndon-Soto, received a report of an assault in progress at 69-81 75th Street in Queens, New York. (Pl. R. 56.1 ¶¶ 2–3.) Officer Zuno testified that the radio report, which he and his partner

received while in their radio mobile patrol, did not identify the source who had reported the assault. (Ex. D at 43.)

Officers Zuno and Soto arrived at the site of the incident soon after they received the radio report. Officer Zuno testified that when he and Officer Soto arrived, two ambulances were already on the scene. (Id. at 24–25.) Plaintiff Liu, who lived with her son at 69-81 75th Street (where they also maintained a business), testified that the officers arrived before the ambulances. (Ex. F at 81.) Her son, plaintiff Yan, testified that he believed (but could not be sure) that the officers arrived ahead of the ambulances. (Ex. J at 87–88.)

Regardless, upon arrival, Officer Zuno, according to his testimony, was immediately approached by an individual who identified himself as Joseph Cappella. (Ex. D at 26.) According to Officer Zuno, Joseph (whom Officer Zuno had never before met) told him that his brother, Massimo, "had an altercation" with Yan and that the dispute had begun when Yan was discovered throwing bottles over a fence and onto the Cappellas' automobile. (Id. at 27.)

Joseph further informed Officer Zuno that the dispute "turned into a physical altercation, in which Mr. Yan became irate and charged at his brother . . . and threw a chair at him and then picked up a wooden plank and struck [Massimo] in the back of the head with it." (Id. at 29.) According to Officer Zuno, Joseph told him that there was a witness across the street who could confirm the critical aspects of his story. (Id.) Officer Zuno testified that he "immediately" called Sergeant Sheridan. (Id.; Ex. C at 15–16.) When Sergeant Sheridan arrived at the scene, Officer Zuno related the story that Joseph had told him. (Ex. D at 32.) Officer Zuno testified that Sergeant Sheridan then suggested that they interview the witness across the street. (Id.)

The men then crossed the street and spoke with Vincenza Cimino, who was in or outside of a tire shop that she managed. According to Sergeant Sheridan, Cimino said that she had

2

witnessed the dispute and that she saw it escalate—i.e. turn physical—when Yan struck Massimo with a stick. (Ex. C at 25.) Officer Zuno testified that Cimino said that she was inside the tire shop when she heard yelling outside, at which point she went to investigate. She said that, when she was outside, she saw Yan charge at Massimo, throw a chair at him, and then strike him with a wooden plank in the back of the head. (Ex. D at 36.) She said that Massimo then "in return struck [Yan] in the face." (Id.)

Cimino testified, with respect to this conversation, that Joseph—"the other brother, the one that doesn't have a big belly"—brought a police officer over to her and said, "Could you please tell the police officer what you saw? You saw the other guy with the piece of wood, you saw him strike my brother, can you tell him you saw that?" (Ex. E at 39.) She said that she confirmed that story.[1] (Id.)

Sergeant Sheridan also testified that he interviewed a second woman who had witnessed the incident. He said that this woman "told me the same thing" as Cimino, which was that "she had observed the altercation turn physical and [that] Mr. Yan had struck Mr. Cappella first." (Ex. C at 27.) Officer Zuno testified that he did not recall a conversation with any second witness, although it is undisputed that there were multiple neighbors on the street that afternoon. (Ex. D at 62.)

Sergeant Sheridan also said that he interviewed Massimo, who informed Sergeant Sheridan that he and Yan had a dispute about "furniture being thrown over the fence, garbage

---

[1] Sergeant Sheridan testified that Cimino also told him that she believed that a security camera mounted outside of the tire shop may have captured the incident on tape and that he and Cimino viewed about ten or fifteen minutes of video before realizing that the camera was not positioned to capture the incident. (Ex. C at 25–27.) With respect to the surveillance video, Officer Zuno testified that he did not "recall or remember" whether Cimino said that she might have captured the incident on video but that he and Sergeant Sheridan did not look at any surveillance video. (Ex. D at 91.) Cimino testified that she did not recall viewing any video on the day of the incident and that she was not even sure that she had a security camera installed on July 30, 2007. (Ex. E at 18–21.) Although Cimino testified that she was not sure whether she had a camera at that time, her testimony suggests that the security camera was installed only after a July 2009 burglary at the tire shop. (Id.)

and different items from one yard being thrown to the next yard." (Ex. C at 33.) Massimo told Sergeant Sheridan that he "approached Mr. Yan regarding the matter" and that "they had an altercation" that "escalated" from a "verbal dispute . . . to a physical dispute" when "Yan approached him with a stick and hit him in the back . . . of the head." (Id. at 33–34.)

Officer Zuno testified that, "shortly after" he and Sergeant Sheridan spoke with Cimino, Liu approached the defendants as they stood in the street. (Ex. D at 44.) Liu was upset and speaking in her "native tongue" (Mandarin). Officer Zuno stated that she said nothing in English. (Id. at 44–45.) Sergeant Sheridan testified that he spoke briefly with Liu and that she "told me that her son was attacked, that the other guy [Massimo] had done it."[2] (Ex. C at 29.)

Liu testified that, either at this point or some later point when the officers were collecting evidence (the chair and slat of wood allegedly used in the assault), she attempted to explain to the officers that her son was the victim of an assault that he did not instigate, but that the officers would not listen.[3] (Ex. F at 88, 119.) Liu further testified that she "told the police that Joseph Cappella had attacked me, but the police officer had refused to arrest him."[4] (Id. at 75.)

Liu testified that she also attempted to show Sergeant Sheridan a civil judgment that she and her son had secured against one or both of the Cappellas in 1999 after one or both of the

---

[2] Sergeant Sheridan did not testify about whether Liu spoke with him in English (which she says she speaks), although it is clear that Sergeant Sheridan does not speak Mandarin. Yan testified that his mother spoke, or attempted to speak, to the officers in English. (Ex. J at 89.)

[3] She said that she approached an officer who appeared to be Asian and asked whether he spoke Chinese. She testified that he said that he did not but that she later saw him interviewing bystanders in Chinese. (Ex. F at 88.) There is no other evidence in the record about this (or any other) Asian officer who may have been on the scene that day.

[4] In this regard, although it is clear that Liu never told (and maybe never had an opportunity to tell) the full story to any law enforcement official on July 30, 2007, Liu maintains that the altercation that led to Yan's arrest began when the Cappellas confronted and physically assaulted her as she was dragging trash from her yard to the curb, which trash the Cappellas and their friends allegedly threw into Liu's yard during a party that they hosted the weekend before the incident (which occurred on a Monday).

brothers had in some way harassed Yan or Liu. (Id. at 93.) The precise nature of the judgment and the incident that gave rise to the judgment are not explained. Liu said that Sergeant Sheridan took a "quick look" at the paper and told Liu to "collect [her] money." (Id.) Officer Zuno testified that he recalled Sergeant Sheridan receiving some sort of paper from Liu and reading it aloud; Officer Zuno thought that the paper regarded a civil matter between the plaintiffs and the Cappellas, but he was not sure. (Ex. D at 65.)

It is not entirely clear whether any officer ever spoke with Yan while at the scene that day. Sergeant Sheridan testified that he had some contact with Yan, that he asked Yan what had happened, and that Yan told him that "he was beaten up by the other individual." (Ex. C at 22.) Officer Zuno testified that he never spoke to Yan. (Ex. D at 43.)

Yan testified that he "couldn't make sure" whether he spoke to a police officer on the day of the incident. (Ex. K at 166.) Liu, consistent with her testimony that no officer was interested in her or her son's version of events, testified that Officer Zuno approached her son and asked for identification but that Officer Zuno did not say anything else to Yan. She also testified that Yan was "severely injured and he couldn't speak to Officer Zuno at all." (Ex. F at 88–89.)

According to Officer Zuno, at some point after the defendants spoke with Cimino, he and Sergeant Sheridan "discussed what was going to happen in the incident, and Sergeant Sheridan told me that we were going to place Mr. Yan under arrest for being a primary aggressor and for assaulting with a weapon, . . . according to what the witness was telling us." (Ex. C at 38.) Officer Zuno stated that Sergeant Sheridan then directed Officer Soto to place Yan under arrest, and he did. (Id. at 40.) Sergeant Sheridan testified that it was Officer Zuno who placed Yan under arrest, and Sergeant Sheridan's memo book apparently reflects this fact (there was

5

testimony about the memo book at Sergeant Sheridan's deposition, but the book itself is not in evidence). (Ex. C at 19–20.) Officer Soto apparently was not deposed in this litigation.

Yan (who was under arrest) and Massimo (who was not) were subsequently transported by ambulance to the hospital. Although Massimo left the scene in an ambulance, Liu testified that she observed no injuries "whatsoever" on Massimo, although she did testify that she saw Massimo enter an ambulance "holding his forehead." (Ex. F at 76–77.) Yan testified that he saw "no" injuries on Massimo. (Ex. J at 92.)

Sergeant Sheridan testified at his deposition that he was "aware now that [Massimo] had a contusion" but he could not "recall if [he] saw it or if the officers told it to [him]," but he "may have very well have seen it [him]self" on the day of the arrest. (Ex. C at 37–38.) Officer Zuno testified that he saw Massimo "with a white bandage wrapped around the top of his head, slightly blood-soaked" while inside an ambulance. (Ex. D at 92.)

It is undisputed that Yan had visible injuries to his face and that he required some sort of surgery to repair bone damage around his eye.

**II. Prosecution**

Later on July 30, 2007, Officer Zuno signed a criminal court complaint that charged Yan with second-degree assault, N.Y. Penal Law § 120.05(2); third-degree assault, N.Y. Penal Law § 120.00(1); fourth-degree criminal possession of a weapon, N.Y. Penal Law § 265.01(2); and second-degree harassment, N.Y. Penal Law § 240.26(1). (Ex. G.) In the complaint, which was—according to Officer Zuno—drafted by an assistant district attorney, Officer Zuno (as deponent) described the criminal acts alleged and also explained the "source of [his] information and the ground for [his] belief" regarding the charged crimes. He said that he was "informed by the complainant, Massimo," that, during a verbal dispute, Yan threw a chair at him and struck

him with a wooden plank.  He also stated that he recovered the chair and plank from the scene of the crime and that Massimo identified the items as the chair and plank used in the assault.  He also said that he was "informed by the complainant, Massimo," that he sustained injuries, including "redness to the face, a laceration to the head, substantial pain to the above mentioned areas, annoyance, and alarm."

It is undisputed that, after he signed the complaint, Officer Zuno had no further involvement with Yan's criminal prosecution.  Sergeant Sheridan also had no involvement with the prosecution beyond his actions on the scene of the arrest.

Yan was arraigned on August 1, 2007 and then released on his own recognizance.  (Def. R. 56.1 ¶ 45.)  Over the course of the next year or so, Yan was required to appear in court in connection with his criminal case on thirteen separate occasions.  (Id.)  The charges against Yan were dismissed on August 31, 2008.  (Ex. H.)  The reasons for the dismissal have not been explained.

### III. This Litigation

Yan and Liu filed this civil rights action on April 7, 2009, naming as defendants the City of New York; NYPD Commissioner Raymond Kelly; NYPD Deputy Inspector Keith Green; the "Commanding Officer" of the 104th Precinct; Officer Zuno; Sergeant Sheridan; NYPD Officer Jane Doe[5]; and Massimo and Joseph Cappella.[6]  By consent, the plaintiffs amended their

---

[5] The plaintiffs alleged that the Jane Doe defendant was the wife of Frank Cappella, brother of Massimo and Joseph, and alleged that she was a police officer at the 104th Precinct.  Apparently no evidence about this Doe was developed during discovery.

[6] On September 21, 2009, the plaintiffs moved for a default judgment against the Cappellas, who had not answered or otherwise responded to the complaint.  On August 6, 2010, the Court terminated that motion without prejudice to renew once the liability of the answering defendants had been determined.  At oral argument in this matter, the plaintiffs indicated that they did not intend to pursue a judgment against the Cappellas, who had never satisfied the 1999 civil judgment described earlier.

complaint on May 25, 2010, asserting no new causes of action but reforming and clarifying the causes of action that were already alleged.

The amended complaint, which is the currently operative complaint, pleads four causes of action. The first, which is labeled "Civil Rights Violation: 42 U.S.C. § 1983," alleges that Yan was falsely arrested; that Yan was denied medical care; that Yan was not provided his Miranda warnings; that certain evidence was not produced to Yan until six-months into his criminal prosecution; that certain evidence was destroyed; and that money was taken from Yan during his arrest. (Am. Compl. ¶¶ 52–80.)

The second cause of action generally alleges negligence against Officer Zuno, Sergeant Sheridan, the NYPD, and the City. (Id. ¶¶ 82–86.) The third cause of action generally alleges negligence against Kelly, Green, the NPYD, and the City. (Id. ¶¶ 87–96.) The fourth cause of action alleges malicious prosecution. (Id. ¶¶ 97–104.)

After discovery, the appearing defendants moved for a pre-motion conference, asserting an interest in moving for summary judgment. The Court held a conference on April 12, 2011. At that conference, counsel for the plaintiffs narrowed the issues to be briefed, stipulating that: (a) the only federal claims remaining in this case are claims for false arrest and malicious prosecution against Officer Zuno and Sergeant Sheridan under 42 U.S.C. § 1983; (b) the plaintiffs cannot establish municipal liability against the City, Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978); (c) the plaintiffs cannot establish liability against Kelly or Green; (d) the NYPD is not a suable entity; and (e) the plaintiffs' state law claims are barred for failure to file a notice of claim.

The parties subsequently filed a fully briefed motion for summary judgment on the false arrest and malicious prosecution claims, which the defendants construed as alleging false arrest

and malicious prosecution of both Yan and Liu. At oral argument, which was held on August 17, 2011, the plaintiffs clarified that only Yan has claims for illegal arrest and prosecution, as Liu was neither arrested nor prosecuted. They agreed that Liu has no claim to relief in this case.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (internal quotation marks omitted). The movant bears the burden of establishing that no genuine issue of material fact exists. Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). The court "must resolve all ambiguities and draw all reasonable inferences against the movant." Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 117 (2d Cir. 2010).

"To survive summary judgment the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2003) (internal quotation marks and emphasis omitted). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). Moreover, "the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion." Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 84 (2d Cir. 2004).

## II. False Arrest

The Court considers first the claim that Yan's constitutional rights were violated when he was arrested on July 30, 2007.

A claim for false arrest under § 1983 requires the plaintiff to prove four elements: (a) the defendant(s) intentionally arrested him or had him arrested; (b) the plaintiff was aware of the arrest; (c) the plaintiff did not consent to the arrest; and (d) the arrest was not privileged. See, e.g., Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

The existence of probable cause to arrest renders an arrest privileged and "is a complete defense to an action for false arrest." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); see also Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) ("no federal civil rights claim for false arrest can exist where the arresting officer had probable cause"); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000). "[P]robable cause does not require an officer to be certain that subsequent prosecution will be successful." Krause v. Bennett, 887 F.2d 362, 371 (2d Cir. 1989). It requires only "a probability" or a "substantial chance" that a crime has been committed by the prospective arrestee. United States v. Bakhtiari, 913 F.2d 1053, 1062 (2d Cir. 1990) (internal quotation marks omitted).

The Second Circuit has said that, although many false arrest plaintiffs will have been arrested on specific charges, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with

10

respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006). That is, "when faced with a claim for false arrest, we focus only on the validity of the arrest, and not on the validity of each charge." Id.

In determining the presence of probable cause to arrest, courts examine "those facts available to the officer at the time of the arrest and immediately before it." Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996); see also Peterson v. Cnty. of Nassau, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) ("the court looks only to the information that the arresting officer had at the time of the arrest"). Relevant here, "[i]t has long been recognized that, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007) (citing Stewart v. Sonneborn, 98 U.S. 187, 194 (1878)); see also Maxwell v. City of New York, 272 F. Supp. 2d 285, 294 (S.D.N.Y. 2003) ("Although the existence of probable cause is predominantly factual in nature, . . . where the pertinent events and the knowledge of the officers is not disputed, summary judgment is proper.").

The defendants urge that they are entitled to summary judgment on the arrest claim because they had probable cause to arrest Yan for, among other things, criminal mischief, assault, and harassment, "after numerous witnesses told officers that Yan started the physical altercation when he hit Massimo in the head with a wooden plank and that Yan had thrown bottles over a fence causing damage to the Cappellas' car."[7] (Def. Br. at 8.)

---

[7] The defendants argue also that, even if they lacked probable cause to arrest, they are entitled to qualified immunity because they had "arguable probable cause" to arrest (Def. Br. at 20–21). See, e.g., Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009).

11

The parties agree that Sergeant Sheridan—who, as the only sergeant at the site of the incident (Ex. C at 20), was in charge that day—made the determination for the officers present that Yan would be arrested. Viewing the evidence in the light most favorable to the plaintiffs, Sergeant Sheridan made that determination with knowledge of the following facts:

- Officer Zuno reported that Massimo's brother described an argument that arose after Yan was discovered throwing bottles onto the Cappellas' automobile;[8]

- Massimo reported that an argument arose over the fact that trash was being hurled into his yard;

- Officer Zuno reported that Joseph described Yan as the aggressor who turned the argument into a physical altercation by striking Massimo with a piece of wood;

- Massimo described Yan as the aggressor who turned the argument into a physical altercation by striking Massimo with a stick;

- Cimino said that Yan turned the argument into a physical altercation by striking Massimo;

- A second female witness said that Yan turned the argument into a physical altercation;

- Either or both of Yan and Liu stated that Yan was the victim of an unprovoked assault, and were interested in telling their side of the story;

- Yan was visibly injured and neither of the Cappellas showed any signs of injury; and

- Either or both of Liu and Yan had secured a civil judgment against one or both of the Cappellas some years ago.

---

[8] Although Officer Zuno testified that he saw damage to the Cappellas' automobile (i.e. a cracked window), which was surrounded by what appeared to be broken bottles, it is not clear that he knew of or reported this fact to Sergeant Sheridan before the arrest decision was made. (Ex. D at 47.)

The Court concludes that these facts (which the plaintiffs do not dispute were known to Sergeant Sheridan), taken together, gave the defendants sufficient cause to arrest Yan for assault, N.Y. Penal Law § 120.05, and harassment, N.Y. Penal Law § 240.26, on the ground that he was the aggressor responsible for a physical altercation with his neighbor (i.e. Massimo's attack was justified).[9]

Sergeant Sheridan was entitled to credit the statements of the alleged victim's brother and also of the alleged victim (the former's statements conveyed through Officer Zuno), notwithstanding the fact that the brother and victim had a two-fold interest in painting Yan as the aggressor, which interest was known to Sergeant Sheridan: (a) helping Massimo to avoid arrest for an unjustified assault; and (b) harming an individual who had previously secured a civil judgment against one or both of the Cappellas. There is no authority for the proposition that a law enforcement officer cannot, in these circumstances, accept the statements of one or two individuals who possess an interest in pressing one of two versions of disputed events.[10] See Curley, 268 F.3d at 69–70 (officer need not credit statements of all involved in a bar fight, including arrestee who claimed to have been breaking-up a fight); Martinez, 202 F.3d at 635 (defendant officer could credit other officers' statements that arrestee was aggressor in physical fight with the officers who were attempting to arrest him).

---

[9] The facts also provided sufficient cause to arrest Yan for criminal mischief, N.Y. Penal Law § 145.00, based upon the allegation that Yan was tossing bottles and possibly other trash onto the Cappellas' property, damaging their automobile. The plaintiffs have not at all engaged the contention that probable cause supported an arrest for criminal mischief on these grounds. The plaintiffs have only complained about the evidence supporting an arrest for Yan's conduct in connection with the physical altercation.

[10] Indeed, at oral argument the plaintiffs seemed to concede this point. They suggested that their complaint is not so much that Yan was arrested, as it is that Massimo was not arrested on the strength of the plaintiffs' version of events (to which the defendants should have been more receptive). But they agreed that, if Massimo had been arrested, and if it were true that officers cannot accept one of two interested parties' versions of events, then Massimo would have a claim for false arrest. Placing police officers in such a no-win position is obviously untenable.

In any event, as the plaintiffs conceded at oral argument, Sergeant Sheridan had more than Joseph's and Massimo's interested statements: he had the statements of two apparently disinterested witnesses (Cimino and the other female neighbor), who both corroborated the Cappellas' version of the incident, identifying Yan as the party responsible for turning an argument into a physical altercation. See Maxwell, 272 F. Supp. 2d at 293 (argument that officers "failed to properly consider Maxwell's perspective" on altercation rejected because officers had statements of "neutral third-parties").

The plaintiffs' suggestion that Cimino's report did not support the decision to arrest is not persuasive. In this regard, the plaintiffs stress that Cimino testified in connection with this litigation that she did not witness the entire exchange between Yan and the Cappellas and that she could not say, at the time of the deposition, whether a Cappella, including Massimo, struck the first blow. (Ex. E at 32.) But, as the plaintiffs conceded at oral argument, there is no evidence that the defendants knew or should have known at the time of Yan's arrest that Cimino believed herself unable to identify Yan as the individual who struck the first blow. The record evidence reveals that the defendants reasonably understood Cimino's statements to them to confirm that Yan struck the first blow. Accordingly, reliance on Cimino was acceptable and supports a finding of probable cause.[11] See Lowth, 82 F.3d at 569; Peterson, 995 F. Supp. at 313 ("the court looks only to the information that the arresting officer had at the time of the arrest.").

---

[11] The record does contain evidence that Cimino had a history of conflict with Liu. Much of this conflict appears to have grown from Liu's complaints about parking practices on the block (e.g. neighbors and their customers blocking access to her driveway). (Ex. E at 13–17.) The Court acknowledges that this history of conflict might provide some reason to take Cimino's statements with caution. See, e.g., Mistretta v. Prokesch, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998). There is no evidence here, however, that Cimino told Officer Zuno or Sergeant Sheridan or any other officer on the scene that day of this history. Indeed, Cimino testified that she did not tell anyone of the incidents involving Liu and that she did not recall telling anyone about any prior incidents involving Yan (whatever those might be). (Id. at 40–41.) There is no reason to charge the defendants with knowledge of these facts. Accordingly, this history of conflict does not affect the probable cause determination.

The plaintiffs' principal argument is that the defendants had an obligation to solicit or at least receive with greater interest the plaintiffs' version of the events of July 30, 2007. The cases, however, do not support this assertion: officers do not have an obligation to conduct an exhaustive investigation, especially where the investigation allegedly required involves consideration of the views of other <u>interested</u> parties. See Panetta v. Crowley, 460 F.3d 388, 395–96 (2d Cir. 2006) ("an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause"); Golodner v. City of New London, No. 08 Civ. 1319, 2010 WL 3522489, at *7 (D. Conn. Sept. 1, 2010) ("failing to provide an arrestee with the opportunity to present his exculpatory evidence does not undermine a probable cause determination").

The plaintiffs' further suggestion that, apart from their statements, there was evidence inconsistent with a finding of probable cause is not persuasive. As the plaintiffs note, a reasonable jury could find that Yan was obviously injured after the physical altercation and that neither Massimo nor Joseph was. Yan's serious injuries, however, are not inconsistent with his having been the party responsible for escalating the conflict. See Martinez, 202 F.3d at 635 ("That Martinez was severely injured is not inconsistent with the officers' account that he was resisting arrest, nor does it undermine a conclusion that he committed a crime."). Similarly, Massimo's lack of injury is not inconsistent with a finding of probable cause to arrest Yan: there is no suggestion or evidence in the record that the blow allegedly struck by Yan must have rendered Massimo visibly injured.

Finally, as suggested by the foregoing discussion, there is no evidence in the record to support the plaintiffs' contention that the defendants immediately arrested Yan without conducting any investigation whatever, which might render summary judgment inappropriate.

15

Morgan v. Nassau Cnty., No. 03-CV-5109, 2009 WL 2882823, at *7 (E.D.N.Y. Sept. 2, 2009) ("if a jury were to believe Plaintiff's contention that he was arrested immediately upon [the defendant officer's] arrival, the existence of probable cause would be in doubt"). The bald suggestion that the defendants conducted no investigation at all is not enough to defeat summary judgment.

For all of these reasons, the Court concludes that, as a matter of law, the defendants had probable cause to arrest Yan and that the false arrest claim must therefore fail.[12]

### III. Malicious Prosecution

The Court next considers the claim that the defendants maliciously prosecuted Yan for second- and third-degree assault, fourth-degree criminal possession of a weapon, and harassment.

To prove a § 1983 claim for malicious prosecution, a plaintiff must prove four elements that come from New York law: (a) the defendant(s) commenced a criminal proceeding against him; (b) the proceeding was terminated in the plaintiff's favor; (c) there was no probable cause to initiate or continue the proceeding; and (d) the defendant(s) acted with malice. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004); Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003); Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000). He must also prove a fifth element, which comes from the federal constitution: "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman, 215 F.3d at 215; see also Singer, 63 F.3d at 116 ("A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must . . . show some deprivation of liberty consistent with the concept of 'seizure.'").

---

[12] The Court need not consider the argument about qualified immunity.

The defendants contend that they are entitled to summary judgment because (a) they did not initiate a prosecution against Yan (only the assistant district attorney did); and, even if they did, (b) they had probable cause to do so, and (c) they did not act with malice. (Def. Br. 14–17.) The plaintiffs argue that the defendants lacked probable cause to prosecute, which if true would give rise to an inference of malice, Boyd v. City of New York, 336 F.3d 72, 78 (2d Cir. 2003) ("lack of probable cause creates an inference of malice"). The plaintiffs do not answer the argument that the defendants did not initiate the prosecution.

Sergeant Sheridan is entitled to summary judgment on this claim because he cannot be said to have initiated the prosecution against Yan. As the defendants note, "there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." Brome v. City of New York, No. 02 Civ. 7184, 2004 WL 502645, at *5–6 (S.D.N.Y. Mar. 15, 2004). But that does not mean that police officers involved in the arrest and prosecution process cannot be liable for initiating a criminal prosecution. "In malicious prosecution cases brought against police officers, plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints." Mitchell v. Victoria Home, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006), citing Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005).

Here, Sergeant Sheridan cannot be said to have initiated the prosecution against Yan because he did not have Yan arraigned, he did not fill out a complaining or corroborating affidavit, and he did not sign a complaint. See, e.g., Alcantara v. City of New York, 646 F. Supp. 2d 449, 458 (S.D.N.Y. 2009); Espada v. Schneider, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007).

The same cannot be said of Officer Zuno. As indicated, after Yan was arrested, Officer Zuno spoke with the assistant district attorney assigned to Yan's case and then signed a criminal complaint. That appears sufficient to render him responsible for initiating a prosecution against Yan. See Wong v. Yoo, 649 F. Supp. 2d 34, 65 (E.D.N.Y. 2009); Williams v. City of New York, No. 05 Civ. 10230, 2007 WL 2214390, at *10 (S.D.N.Y. July 26, 2007) ("It is well-settled . . . that signing and submitting complaints constitutes an initiation of a prosecution.").

Nevertheless, both defendants are entitled to summary judgment because Yan's prosecution was supported by probable cause. The Court has already explained that probable cause supported Yan's arrest for being the aggressor in the physical altercation with Massimo. And probable cause to believe that he was the aggressor is probable cause to believe that he was guilty of the crimes charged.

This means that the prosecution, which followed the arrest, was supported by probable cause unless some evidence surfaced between the time of the arrest and the initiation and continuation of the prosecution to change that fact. See Wong, 649 F. Supp. 2d at 66–67 ("if probable cause exists at the time of the arrest, it is presumed to continue to the time of prosecution unless undermined by new exculpatory facts"); Johnson v. City of New York, No. 05 Civ. 7519, 2008 WL 4450270, at *8 (S.D.N.Y. Sept. 29, 2008) ("In the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie.").

There is no evidence to support a finding that probable cause to believe that Yan had committed the crimes charged dissipated at some point after the arrest such that the subsequent prosecution was unsupported by sufficient cause. The Court does not understand the plaintiffs to

argue otherwise.  Accordingly, the malicious prosecution claim cannot succeed.  The defendants are entitled to summary judgment.[13]

## CONCLUSION

For the reasons stated, the defendants' motion for summary judgment is granted in full. The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       November 30, 2011

/s/
Carol Bagley Amon
Chief United States District Judge

---

[13] The Court need not consider the qualified immunity argument.